IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

LORENZO DEWAYNE JOHNSON,      §
                                                        §
               Petitioner,                      §
                                                        §
V.                                                     §
                                                        §        No. 3:13-cv-187-P-BN
WILLIAM STEPHENS, Director       §
Texas Department of Criminal Justice,   §
Correctional Institutions Division,      §
                                                        §
               Respondent.                   §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Lorenzo Dewayne Johnson, a Texas prisoner, has filed an application

for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein,

the application should be denied.

**Background**

Petitioner was charged with capital murder by a Dallas County grand jury. He

was found guilty at trial and sentenced to an automatic term of life imprisonment.

Petitioner's conviction was affirmed on direct appeal. *See Johnson v. State*, No. 05-09-

00133-CR, 2010 WL 5142392 (Tex. App. – Dallas, Dec. 20, 2010, pet. ref'd). His

application for state post-conviction relief was denied without written order on the

findings of the trial court. *See Ex parte Johnson*, WR-78,251-01 (Tex. Crim. App. Sept.

19, 2012). Petitioner then filed this action in federal district court.

The underlying facts of this case were set forth at length by the Dallas Court of

Appeals on direct review. *See Johnson*, 2010 WL 5142392, at *1-*6.

Shortly before midnight and in the early morning hours of November 15, 2007, Petitioner and Eric Harris, known as "Black," went to an apartment in the Southwind apartment complex in Dallas, Texas to purchase some marijuana. The apartment had security cameras and door braces consistent with the apartment's use as a "drug house." Appellant and Harris stayed for a number of hours, smoking marijuana, drinking, and playing dominoes. Christopher Dickerson, Vincent Corley, and Brandon Brown were also present in the apartment. At some point between approximately 5:00 a.m. and 6:00 a.m., Harris went to the bathroom and returned carrying one or two automatic pistols. Harris appeared to be in charge and ordered Dickerson and Brown to disrobe. Harris and Petitioner took Dickerson's and Brown's cell phones and money, and Petitioner tied their arms with duct tape. Harris then went into the bedroom, woke up Corley, and brought him into the living room at gunpoint. Corley, too, was stripped and then tied up by Petitioner. Petitioner and Harris then marched the three men to the bathroom. Petitioner and Harris wiped certain areas of the apartment down.

The three bound men were lined up across the tub with their hands tied behind their backs. Dickerson testified that Harris had two nine millimeter automatic handguns and that Petitioner had two revolvers. Corley stated that Harris had two pistols and that Petitioner had one pistol that he pointed at Brown. While Harris held the three men at gunpoint, Petitioner took two trips outside the apartment, alone, to move the stolen items to his car and recover a bag of marijuana and PCP from another vehicle. Brown, Corley, and Dickerson were covered with a blanket. Harris asked if

they were ready to die. Dickerson heard two clicks, and Harris told Petitioner to "move with that broke ass gun." Corley stated that Harris said "you know what to do" to Petitioner before the shots were fired. Dickerson thought it was Harris who started shooting. Corley heard three shots; Dickerson heard five. Corley was shot in the head, but the bullet "bounced off his skull." Dickerson was shot in the back and was paralyzed from the chest down. Brown was shot in the head and killed. Dickerson and Corley both testified that it did not appear that Petitioner was being threatened or pressured to participate in any way. Petitioner and Harris left the apartment, and Petitioner drove the car away. Harris gave Petitioner a bag full of drugs that they had taken during the incident.

Crime scene analysis later found four shell casings in the bathroom: one .25-caliber shell casing and three 9-millimeter shells. Brown's autopsy revealed a bullet wound to the right side of his head. A bullet recovered by the autopsy was consistent with being shot by a .38- or .357-caliber revolver. Petitioner was arrested a few months later in Minneapolis, Minnesota. His friend, Andre Sims, testified that Petitioner stated shortly before his arrest that he and two other individuals "robbed some drug dealers and they came out shooting and we shot back." Petitioner also provided a videotaped statement to Detective Robert Arredondo.

Petitioner testified in his own defense. He admitted accompanying Harris to the apartment, assisting with binding the arms of Dickerson, Brown, and Corley, carrying their property to the car, retrieving marijuana and PCP from another vehicle, wiping down a table, and driving the getaway vehicle. But Petitioner claimed that he was

under duress during the entire episode because he feared that Harris would shoot him if he fled or did not comply. Petitioner denied handling, pointing, or shooting any loaded firearm. He admitted visiting Harris after the incident so that he could sell some of the drugs that he had retrieved.

The jury found Petitioner guilty of capital murder, and he was sentenced to life imprisonment.

Petitioner contends that (1) the trial court violated his due process rights by failing to provide a jury instruction on "theft as an afterthought"; (2) the prosecutor committed misconduct by failing to correct false testimony by Corley and Dickerson; (3) the evidence was insufficient to justify rejection of his duress defense; (4) he received ineffective assistance of trial counsel because his attorney (a) failed to obtain funds to retain an expert witness in the field of drug abuse; (b) did not object to perjury committed by Dickerson and Corley; (c) did not request funds to hire an expert on ballistics; and (d) neglected to request an instruction on "theft as an afterthought"; (4) he received ineffective assistance of appellate counsel; and (5) the trial court committed error by denying the request to play a portion of videotape in which Petitioner explained the circumstances surrounding a prior conviction.

## Legal Standards

Where, as here, a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

-4-

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Harrington v. Richter*, 131 S. Ct. 770, 784 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning").

The Sixth Amendment to the United States Constitution guarantees a defendant

reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 687-88. To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *See id.* at 687, 692. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

> [B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."

*Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) (quoting *Strickland,* 466 U.S. at 689), *cert. denied,* 133 S. Ct. 1584 (2013).

And, to demonstrate prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. "The likelihood of

a different result must be substantial, not just conceivable." *Harrington,* 131 S. Ct. at 792.

Finally, where, as here, the state court adjudicated an ineffective assistance claim on the merits, this Court must review Petitioner's claim under the doubly deferential standards of both *Strickland* and Section 2254(d). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard" – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington,* 131 S. Ct. at 785.

## Analysis

### Jury Charge Error

Petitioner first alleges that the trial court erred by failing to submit to the jury an instruction on the legal theory of "theft as an afterthought." The state habeas court found this ground to be procedurally barred because Petitioner failed to raise it on direct appeal and to be without merit because "theft as an afterthought is not a recognized defensive issue and providing such an instruction would be an improper comment on the weight of the evidence." Dkt. No. 13-10 at 151.

A federal court may not consider the merits of a habeas claim if a state court has denied relief due to a procedural default. *See Sawyer v. Whitley,* 505 U.S. 333, 338 (1992). The state court opinion must contain a "plain statement" that its decision rests on adequate and independent state grounds. *Harris v. Reed,* 489 U.S. 255, 261-62 (1989); *see also Smith v. Collins,* 977 F.2d 951, 955 (5th Cir. 1992). To be an adequate ground for denying relief, the state procedural rule must be strictly or regularly applied

to similar claims. *See Hathorn v. Lovorn,* 457 U.S. 255, 262-63 (1982); *see also Johnson v. Puckett,* 176 F.3d 809, 824 (5th Cir. 1999). Under Texas law, claims that could have been raised on direct appeal, but are presented for the first time on state collateral review, are procedurally defaulted. *See Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996). The Fifth Circuit has held that "'the *Gardner* rule set forth an adequate state ground capable of barring federal habeas review.'" *Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005) (quoting *Busby,* 359 F.3d at 719).

Petitioner claims that none of his grounds for relief should be deemed procedurally defaulted, because the state habeas court denied his writ without written order and therefore did not clearly and expressly raise the procedural bar. *See* Dkt. No. 19 at 10. However, "[w]hen one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250, 256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore – and hence, look through – an unexplained state court denial and evaluate the last reasoned state court decision." *Id.*; *see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of relief "on the findings of the trial court" by the Texas Court of Criminal Appeals adopts an express finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v. Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."). The trial court clearly held

that Petitioner's claim "could have been raised on direct appeal, has not been preserved and is procedurally barred on habeas." Dkt. No. 13-10 at 151.

Although a federal court may consider a procedurally defaulted claim if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[ ] will result in a fundamental miscarriage of justice," *Coleman v. Thompson,* 501 U.S. 722, 750 (1991), Petitioner has failed to establish cause and actual prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice, *see id.* Therefore, this claim is procedurally barred.

Even if the claim were not procedurally barred, Petitioner has not established a constitutional violation. The state habeas court concluded that Petitioner's proposed jury charge was improper as a matter of state law. Federal habeas corpus relief does not lie for errors of state law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991); *Gibbs v. Johnson,* 154 F.3d 253, 259 (5th Cir. 1998). Accordingly, this claim should be denied.

Alleged Prosecutorial Misconduct

Petitioner next contends that the prosecutor committed misconduct by failing to correct allegedly false trial testimony by Dickerson and Corley, which Petitioner believes to be inconsistent with prior statements to police and his own claim that he never handled or aimed a loaded firearm. The state habeas court denied this claim, finding that, "any discrepancies in the testimony of the witnesses were a question of fact for the jury to resolve and do[] not show any prosecutorial misconduct." Dkt. No. 13-10 at 151.

The Due Process Clause prohibits the use of perjured testimony to obtain a conviction. *See Giglio v. United States,* 405 U.S. 150, 153 (1972); *see also Black v. Collins,* 962 F.2d 394, 407 (5th Cir. 1992). In order to establish a due process violation based on the use of perjured testimony, a habeas petitioner must prove that: (1) the testimony was false; (2) the prosecutor knew it was false; and (3) the evidence was material. *See Blackmon v. Scott,* 22 F.3d 560, 565 (5th Cir. 1994). False testimony is material if "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" *Creel v. Johnson,* 162 F.3d 385, 391 (5th Cir. 1998) (quoting *Kirkpatrick v. Whitley,* 992 F.2d 491, 497 (5th Cir. 1993)).

Here, Petitioner argues that the trial testimony of Dickerson and Corley was inconsistent with written police reports and states that the prosecutor committed "subornation of perjury." Dkt. No. 4 at 7-8. He also notes that the testimony is inconsistent with his own claims that he never possessed or pointed a loaded firearm. *See* Dkt. No. 3 at 10. But Petitioner does not establish that any such testimony was knowingly false, that the prosecutor knew it was false, or the information was material to his guilt, where Petitioner could have been found guilty under the Texas law of parties even if he did not personally possess a firearm. Contradictory testimony from witnesses does not, standing alone, establish perjury. *See Kutzner v. Johnson,* 242 F.3d 605, 609 (5th Cir. 2001); *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990). In any event, the inconsistencies of the witnesses' testimony were fully explored during cross-examination, and the jury, as finder of fact, was free to determine the credibility of each witness. Accordingly, Petitioner has not established that the state habeas court's

denial of this claim was unreasonable.

Duress Defense

Petitioner next claims that the evidence was insufficient to justify rejection of his duress defense. He contends that the rejection of his affirmative defense was "against the great weight and preponderance of the evidence and unjust." Dkt. No. 3 at 11.

Initially, the state habeas court found this ground to be procedurally barred because Petitioner failed to raise it on direct appeal. *See* Dkt. No. 13-10 at 151. Again, claims that could have been raised on direct appeal, but are presented for the first time on state collateral review, are procedurally defaulted. *See Gardner,* 959 S.W.2d at 199. Petitioner has again failed to establish cause and actual prejudice for his default or that failure to consider the claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750. This claim, too, is procedurally barred.

In addition, the claim was rejected by the Dallas Court of Appeals on direct appeal. That court set forth the Texas standard for an affirmative defense of duress and the burden on a defendant asserting such a claim. *See Johnson*, 2010 WL 5142392, at *7 (citing TEX. PENAL CODE ANN. §§ 2.04(d), 8.05(a) & (c); *Edwards v. State,* 106 S.W.3d 833, 843 (Tex. App.– Dallas 2003, pet. ref'd)). The court then found that

> [t]he evidence in this case was sufficient for the jury to reject appellant's affirmative defense. Although appellant testified that he feared Harris and thought Harris might shoot him if he did not participate in the offense, Dickerson testified that Harris did not threaten appellant at any time during the criminal episode. The jury also could have considered the fact that appellant had two opportunities to flee the crime scene when he went outside to his car, yet returned to the apartment. Appellant argued

that he did not run away because he thought Harris would hunt him down and harm or kill him, yet appellant continued to live in the same neighborhood after the murder and did not try to hide from Harris. Appellant also deliberately sought out Harris shortly after the murder in an attempt to sell back to Harris some of the drugs that Harris had given appellant. The jury was in the best position to evaluate the credibility and demeanor of the witnesses when the testimony was delivered. *See Edwards,* 106 S.W.3d at 844. After reviewing the evidence in this case under the appropriate standard, we conclude the jury's rejection of appellant's affirmative defense of duress was not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule appellant's first issue.

*Id.*

A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see also Gibson v. Collins,* 947 F.2d 780, 781 (5th Cir. 1991). The evidence must be viewed in the light most favorable to the verdict. *See Jackson,* 443 U.S. at 319; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990). "Where a state appellate court has conducted a thoughtful review of the evidence . . . its determination is entitled to great deference." *Callins v. Collins*, 998 F.2d 269, 276 (5th Cir. 1993). And federal courts are bound by state statutes and case law in determining the elements of an offense. *See Foy v. Donnelly,* 959 F.2d 1307, 1314 (5th Cir. 1992).

Petitioner has failed to prove that the state court's rejection of his legal insufficiency claim resulted in a decision that was contrary to, or involved an unreasonable application of, the Supreme Court's *Jackson* decision or any other clearly

established federal law. Accordingly, this ground for relief should be denied.

Ineffective Assistance of Trial Counsel

Petitioner alleges that he received ineffective assistance of trial counsel because his attorney failed to obtain funds to retain expert witnesses in the fields of drug abuse and ballistics, did not object to alleged perjury by Dickerson and Corley, and neglected to request an instruction on "theft as an afterthought." The state habeas court rejected his claims of ineffective assistance of trial counsel, finding that "applicant has failed to show by a preponderance of the evidence that his trial counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment or that his trial counsel made errors that prejudiced the defense by depriving the applicant of a fair trial." Dkt. No. 13-10 at 152. That court concluded that Petitioner "was represented at trial by an attorney who exercised all of the skill and expertise that one could reasonably expect from an attorney." *Id.*

*Expert Witness in Addiction*

Petitioner claims that his attorney was prejudicially deficient because he failed to retain an expert witness – such as a psychiatrist, psychologist, or other addiction expert – that could have testified that his conduct was involuntary and the product of duress. *See* Dkt. No. 4 at 11-13. The state habeas judge denied this ineffective assistance claim. That court considered the affidavit testimony of defense attorney Edwin King, whom the court found to be trustworthy and found his affidavit statements "worthy of belief." Dkt. No. 13-10 at 151. The court explained:

Based on a thorough review of Applicant's instant application and the

affidavit submitted by Mr. King, the Court finds that the statements made by Mr. King are true, correct, and dispositive of the allegation presented by applicant relative to his trial and appellate counsel.

This Court notes that Mr. King states in his affidavit regarding the use of an expert witness in drug addiction:

> I do not have any reason to believe that an expert in drug addiction or an expert in FMRI would have helped Mr. Johnson in his defense. Surviving complain[an]ts testified that he actively participated in the offense, Mr. Johnson told a friend that he had "shot it out with some drug dealers," and he had two opportunities prior to the shooting to flee the scene.

*Id.* at 151-52.

"[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). To prove that counsel was ineffective for failing to call a witness, "the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *see also Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

Petitioner does not identify any drug addiction expert who could have been appointed by the trial court, does not allege with specificity what the investigation would have revealed or the substance of the missing expert testimony, and fails to explain how the results of the investigation or the testimony of an expert would have

changed the outcome of the trial. *See Wiggins v. Thaler,* No. 3:10-cv-61-P, 2010 WL 5093943, at *5 (N.D. Tex. Oct. 19, 2010) (citing *Day,* 566 F.3d at 538), *rec. adopted,* 2010 WL 5093942 (N.D. Tex. Dec. 14, 2010) (denying habeas claim that counsel should have requested appointment of an expert to investigate the complainant's family dynamics and reason for accusing petitioner). In addition, there is no evidence that any expert witness was available to testify at trial, no evidence of the contents of any such witness's testimony, and no evidence that the testimony would have been favorable.

Moreover, Petitioner must be able to show "a reasonable probability that, but for counsel's failure to request an expert, the jury would have had a reasonable doubt concerning his guilt." *Earhart v. Johnson,* 132 F.3d 1062, 1068 (5th Cir. 1998). Here, Petitioner does not provide any evidence – aside from his belief that his drug addition led to an inability to resist Harris's commands – to establish that he was not guilty by reason of duress.

Accordingly, he is not entitled to relief on this issue.

*Ballistics Expert Witness*

Petitioner also claims that a ballistics expert might have established that the bullet found during Brown's autopsy was not shot from a revolver. *See* Dkt. No. 4 at 15-17. Respondent claims that this ground is unexhausted and barred from federal review because it was not raised in Petitioner's state habeas petition. *See* Dkt. No. 16 at 18-19. Petitioner claims that it was urged in a "motion for objection," which appears to be a reply brief filed with the state habeas court after the state had filed an answer to his habeas petition. *See* Dkt. No. 19 at 2-4; *see also* Dkt. No. 13-10 at 134-49.

Initially, nothing in the record suggests that the state court allowed Petitioner to amend his original writ or considered the new claim on the merits. Under state law, issues raised for the first time in a reply brief are not considered. *See Swanson v. Thaler*, No. 4:11-cv-24-A, 2011 WL 4014338, at *3 n.2 (N.D. Tex. Sept. 9, 2011) (citing Tex. R. App. P. 38.2). Because Petitioner did not present this claim to the highest available state court in a procedurally correct manner, it is unexhausted. *See, e.g.*, *Culberson v. Thaler,* No. 3:10-cv-2368-O-BD, 2011 WL 6934954, at *3 (N.D. Tex. June 30,2011), *rec. adopted,* 2011 WL 6934900 (N.D. Tex. Dec. 28, 2011) (finding that claims raised in motion to amend were unexhausted for purposes of federal habeas review); *Dotson v. Quarterman,* No. 4:06-cv-715-A, 2008 WL 340473, at *6-7 (N.D. Tex. Jan. 28, 2008) (same). If presented with this unexhausted claim in a successive habeas petition, a Texas court would likely find it barred. Consequently, federal habeas relief is not proper. *See Nobles v. Johnson,* 127 F.3d 409, 422-23 (5th Cir. 1997).

In any case, Petitioner has failed to establish that, but for counsel's failure to request a ballistics expert, the jury would have had a reasonable doubt concerning his guilt. *See Earhart*, 132 F.3d at 1068. Petitioner does not provide any evidence to suggest that the state's expert was incorrect about the type of bullet recovered during Brown's autopsy, nor that such testimony was in any way material to Petitioner's guilt. There is simply no basis to believe that a jury – faced with hypothetical testimony that the bullet that killed Brandon Brown was shot from a pistol rather than a revolver – would have determined that Petitioner was not guilty of capital murder.

*Failure to Object to the Testimony of Corley and Dickerson*

Petitioner also faults his attorney for failing to object to Corley and Dickerson's testimony that he was armed, which was "aggrieved and self-serving." *See* Dkt. No. 4 at 13. The state habeas court rejected this claim, holding that "there were no legitimate bases for applicant's trial counsel to object to the testimony of Corley and Dickerson and that his trial counsel did thoroughly cross-examine these witnesses as to the discrepancies between their testimony and their written statements to the police." Dkt. No. 13-10 at 152.

As discussed above, Petitioner has not provided any evidence, aside from his own conclusory claims, to suggest that either witness committed perjury at his trial. Again, contradictory testimony from witnesses does not, standing alone, establish perjury, *see Koch,* 907 F.2d at 531, and the inconsistencies in the witnesses' testimony were fully explored by defense counsel during cross-examination. It is well settled that an attorney is not ineffective for failing to raise a meritless objection. *See Clark v. Collins,* 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Petitioner has failed to rebut the state habeas court's findings regarding his allegations of ineffective assistance. As such, federal habeas relief is precluded.

Ineffective Assistance of Appellate Counsel

Petitioner contends that he received ineffective assistance of counsel on appeal because his appellate attorney, John H. Hagler, failed to (1) argue that trial counsel was ineffective; (2) raise the argument that the theft was an afterthought to the

murder; (3) argue that trial counsel should have requested an expert witness to testify about substance abuse; (4) argue that trial counsel should have requested an expert witness to testify regarding ballistics; (5) realize that the jury charge contained the term of art "knowingly" even though it was not charged in the indictment; and (6) argue that the law of parties instruction was abridged.

Respondent contends that this ground for relief is unexhausted and procedurally barred because it was not urged before the state habeas court. *See* Dkt. No. 16 at 18-19 & 34. Indeed, Petitioner alleged certain instances of ineffective assistance of appellate counsel for the first time in his "motion for objection" reply brief. *See* Dkt. No. 13-10 at 6-55 & 145-47. Because Petitioner did not present these claims to the highest available state court in a procedurally correct manner, they are unexhausted. *See, e.g. Culberson,* 2011 WL 6934954, at *3.

Regardless, Petitioner's claims of ineffective assistance of appellate counsel are without merit. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir. 1989); *see also Jones v. Barnes*, 463 U.S. 745, 751 (1983) ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."); *id.* at 754 (holding that "[f]or judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and

effective advocacy that underlies *Anders*" and that "[n]othing in the Constitution or our interpretation of that document requires such a standard"). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003).

On direct appeal, Hagler raised three issues: that the jury's rejection of a duress defense was manifestly unjust; that the evidence was insufficient to justify conviction; and that the redacted portion of the DVD video recording of Petitioner's statement upon arrest should have been admitted under the rule of optional completeness. *See Johnson*, 2010 WL 5142392 at *6-*9; *see also* Dkt. No. 12-24. Petitioner has failed to establish that his conviction would have been reversed had any of the unraised claims been urged on direct appeal. Trial counsel was not ineffective under *Strickland* for failing to raise claims that failed on habeas review. *See Coker v. Thaler*, 670 F. Supp.2d 541, 554 (N.D. Tex. 2009) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on collateral review). This ground for relief should be overruled.

Trial Court Error

Finally, Petitioner claims that the trial court erred in denying his request to play an un-redacted portion of his interview with Detective Arredondo in which he explains the circumstances of his prior robbery conviction. *See* Dkt. No. 4 at 21-22. This claim was denied by the Dallas Court of Appeals on direct review. *See Johnson*, 2010 WL 5142392, at *10. That court concluded that the trial court did not abuse its discretion or misapply the rule of optional completeness.

It is well settled that violations of state law, including the alleged misapplication of evidentiary rules, are generally not cognizable on habeas review unless they render the trial fundamentally unfair. *See Hughes v. Dretke,* 412 F.3d 582, 591 (5th Cir. 2005). This includes allegations that the rule of optional completeness has been misapplied. *See Wright v. Quarterman,* 470 F.3d 581, 585-86 & n.5 (5th Cir. 2006). It is not the role of a federal habeas court to review the state courts' interpretation of its own rules of evidence. *See, e.g., Charles v. Thaler,* 629 F.3d 494, 500 (5th Cir. 2011) (noting that federal habeas court's function is not to review a state's interpretation of its own law). Petitioner has not established that the court's evidentiary ruling constituted a denial of fundamental fairness such that due process was violated. Petitioner is therefore not entitled to habeas relief on this ground.

### Recommendation

Petitioner's application for writ of habeas corpus should be denied.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure

to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 18, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE